UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
(Orlando Division)

Case No.: 6:26-cv-00085

ZAKARIYAH ARRAZOLA and
TYRAANN PARKER,
individually and on behalf of all others
similarly situated,

Plaintiffs,

v.

HATCHITT TAX CLUB, INC. and
JOSEPH DELFGAUW,

Defendants.

**DEFENDANTS' *FIRST AMENDED* MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT PURSUANT TO RULE 12(B)(6) WITH INCORPORATED MEMORANDUM OF LAW**

Defendants, Hatchitt Tax Club, Inc. ("Hatchitt") and Joseph Delfgauw ("Delfgauw") (collectively "Defendants"), by and through their attorneys, respectfully submit this First Amended Motion to Dismiss Plaintiffs' Class Action Complaint (the "Complaint") Pursuant to Federal Rule of Civil Procedure 12(b)(6) with Incorporated Memorandum of Law. In support thereof, Defendants state as follows:

## INTRODUCTION

Plaintiffs Zakariyah Arrazola ("Arrazola") and Tyraann Parker ("Parker") (collectively "Plaintiffs") filed this proposed class action against Defendants under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059. Plaintiffs allege that Defendants sent unsolicited telemarketing text messages using short code 71988 and failed to honor opt-out requests. The Complaint asserts three counts: (i) Count I under 47 U.S.C. § 227(c) for alleged violations of the internal do-not-call regulations (Dkt. 1, ¶¶ 96–102); (ii) Count II under Fla. Stat. § 501.059(8) for alleged violations of the FTSA's Caller ID Rules (Dkt. 1, ¶¶ 103–106); and (iii) Count III under Fla. Stat. § 501.059(5) for alleged violations of the FTSA's internal do-not-call provisions (Dkt. 1, ¶¶ 107–114).

Each count fails as a matter of law. Count I must be dismissed because this Court and numerous other courts in this District have held that the private right of action under 47 U.S.C. § 227(c)(5) does not extend to text messages. *El Sayed v. Naturopathica Holistic Health, Inc.*, 2025 U.S. Dist. LEXIS 209469 (M.D. Fla. Oct. 24, 2025); *Lopresti v. Nouveau Essentials Mktg. LLC*, No. 5:25-cv-00282-CEM-PRL, 2026 U.S. Dist. LEXIS 39599 (M.D. Fla. Feb. 26, 2026). Counts II and III must be dismissed as to Parker because the Complaint fails to allege either that Parker was a Florida resident or in Florida when she received the texts, or that the messages were physically transmitted from Florida—the two jurisdictional predicates

required by the FTSA. *Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, 603 F. Supp. 3d 1334, 1346 (S.D. Fla. 2022); *Dobronski v. Tobias & Assocs.*, 769 F. Supp. 3d 681, 703–04 (E.D. Mich. 2025). Counts II and III also independently fail to state a claim as to both Plaintiffs for the reasons set forth below. Finally, all claims against Delfgauw individually must be dismissed because the Complaint pleads only conclusory corporate officer conduct, which is insufficient under *Iqbal* and the controlling TCPA personal liability standard. *El Sayed*, 2025 U.S. Dist. LEXIS 209469, at *4; *Appelbaum v. Rickenbacker Grp., Inc.*, 2013 WL 12121104, at *3 (S.D. Fla. July 31, 2013).

## BACKGROUND

In their Class Action Complaint (Dkt. 1), Plaintiffs contend that Defendants sent unsolicited telemarketing text messages using short code 71988 to market Hatchitt's tax planning and consultation services. (Dkt. 1, ¶¶ 16, 33–34.) Hatchitt is a Michigan-based limited liability company with its principal address in Grandville, Michigan. (Dkt. 1, ¶ 12.) Delfgauw, Hatchitt's president, is alleged to reside in Cape Coral, Florida. (Dkt. 1, ¶ 13.)

Arrazola, a Florida resident, alleges he began receiving telemarketing texts at least in August 2025, texted "STOP" on August 25, 2025, and received at least six additional messages afterward. (Dkt. 1, ¶¶ 46–50.) Parker alleges she is a citizen of the State of Wisconsin, domiciled in Washington County, Wisconsin; that she began receiving texts in September 2024; that she texted "STOP" at least seven

times beginning September 18, 2024; and that she received at least sixty-three post-opt-out messages through January 6, 2026. (Dkt. 1, ¶¶ 11, 51–56.) Plaintiffs further allege that short code 71988 was not capable of receiving incoming calls. (Dkt. 1, ¶¶ 48, 54.)

On behalf of three proposed classes, Plaintiffs assert: Count I under 47 U.S.C. § 227(c)(5) for failure to maintain internal do-not-call procedures (nationwide "Internal DNC Class"); Count II under Fla. Stat. § 501.059(8) for Caller ID violations ("FTSA ID Class"—Florida residents); and Count III under Fla. Stat. § 501.059(5) for violations of Florida's internal do-not-call rules ("FTSA Internal DNC Class"—Florida residents). (Dkt. 1, ¶ 83.)

## LEGAL STANDARD UNDER RULE 12(b)(6)

A complaint fails under Rule 12(b)(6) if it does not provide enough information to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555, 570 (2007). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts accept well-pleaded facts as true, but "do not … accept as true unwarranted deductions of fact or legal conclusions." *Henry v. Jones*, 484 F. App'x 290, 291 (11th Cir. 2012) (internal quotations omitted).

## ARGUMENT

### I. COUNT I MUST BE DISMISSED BECAUSE THE TCPA'S PRIVATE RIGHT OF ACTION UNDER 47 U.S.C. § 227(c) DOES NOT APPLY TO TEXT MESSAGES.

Following the Supreme Court's elimination of *Chevron* deference, courts in this District have consistently held that the private right of action under the TCPA for unlawful telephone solicitations does not extend to text messages. *El Sayed*, 2025 U.S. Dist. LEXIS 209469, at *3[1]; *Lopresti*, 2026 U.S. Dist. LEXIS 39599, at *11–12. Count I, brought under 47 U.S.C. § 227(c)(5), is based exclusively on text messages. (Dkt. 1, ¶¶ 96–102.) Because text messages are not "telephone calls" within the meaning of the TCPA, Count I must be dismissed.

#### *A. There Is No Basis to Read the TCPA as Applying to Text Messages Other Than Abandoned FCC Deference.*

Section 227(c) of the TCPA provides a private right of action to "[a] person who has received more than one *telephone call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5) (emphasis added). Section 227(c) does not mention text messages, despite the TCPA distinguishing between telephone calls and text messages in other sections. *See* 47 U.S.C. § 227(e).

[1] The undersigned represented Naturopathica Holistic Health, Inc. in the above referenced matter, and the Plaintiff's allegations in that case were similar to the one at hand, in that the claims arose solely from text message communications. The Court observed that those claims could not prevail in light of the Court's vacation of Chevron Deference.

The TCPA was applied to text messages solely through FCC rulemaking. In 2003, the FCC decreed that the term "call" encompasses both voice calls and text calls. *In Re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014 ¶ 165 (2003). The FCC cited no statutory basis—it rested purely on its subjective interpretation of the statute's goals. Courts followed because they believed they were required to defer to the FCC under the Chevron Deference doctrine. *See, e.g., Murphy v. DCI Biologicals Orlando, LLC,* 797 F.3d 1302, 1305 (11th Cir. 2015). That deference is no longer required.

***B. Courts Are No Longer Required to Defer to the FCC.***

The Supreme Court eliminated *Chevron* deference in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). *Loper* restored courts to their traditional role "to decide whether the law means what the agency says." *Id.* at 392. The Supreme Court subsequently addressed the TCPA directly, ruling that district courts are not "bound by the FCC's interpretation of the TCPA" and "must independently determine for itself whether the agency's interpretation of a statute is correct" using "ordinary principles of statutory interpretation." *McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 606 U.S. 146, 155, 168 (2025) (citing *Loper Bright*, 603 U.S. at 402).

### *C. This Court Has Held That "Text Messages" Are Not "Telephone Calls" Under § 227(c)(5).*

In *El Sayed*, this Court held that "the statutory text here is clear, and a text message is not a 'telephone call.'" 2025 U.S. Dist. LEXIS 209469, at *3 (adopting Judge Winser's conclusion in *Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195, at *1 (N.D. Fla. 2025)). The Court observed that "in common American English usage, a 'telephone call' and a 'text message' are separate and distinct forms of communication," and that the term "text message" appears elsewhere in the TCPA and related amendments, "confirm[ing] Congress understood the pertinent distinction and legislated mindful of the distinction." *Id.* at *3–4 (citing *Fernandez v. Seaboard Marine Ltd.*, 135 F.4th 939, 958 (11th Cir. 2025)). "The omission of 'text message' from paragraph 227(c)(5) confirms that the provision applies only to a 'telephone call.'" *Id.* at *4. This ruling was affirmed by Judge Lammens in *Lopresti*, 2026 U.S. Dist. LEXIS 39599, at *10–11. Most district courts in Florida have reached the same conclusion. *Davis*, 2025 WL 2491195, at *4; *Harriel v. Bealls, Inc.*, 2025 WL 2379617 (M.D. Fla. Aug. 15, 2025); *but see Glasel v. Office Depot, LLC*, 2025 U.S. Dist. LEXIS 598156, at *7 (S.D. Fla. Nov. 25, 2025).

Because Count I is based entirely on text messages sent via short code 71988 (Dkt. 1, ¶¶ 33, 46–56, 96–102), and because this Court has ruled that text messages are not actionable under 47 U.S.C. § 227(c)(5), Count I must be dismissed with prejudice.

## II. COUNTS II AND III MUST BE DISMISSED AS TO PLAINTIFF PARKER BECAUSE THE COMPLAINT FAILS TO ALLEGE THE FTSA'S JURISDICTIONAL REQUIREMENTS.

Second, Plaintiff's claims under Florida Statutes likewise fail as a matter of law. The FTSA applies only to communications that satisfy at least one of two jurisdictional requirements: (1) the communication was made to a Florida resident or a person physically located in Florida at the time of the communication, or (2) the communication originated from Florida. Fla. Stat. §§ 501.059(1)(e), (8)(d). The statute "does not extend to calls to non-Florida residents or persons outside the state." *Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, 603 F. Supp. 3d 1334, 1346 (S.D. Fla. 2022); *see also Dobronski v. Tobias & Assocs.*, 769 F. Supp. 3d 681, 703–04 (E.D. Mich. 2025) (dismissing FTSA claims where plaintiff did not allege he was a Florida resident or in Florida when receiving the calls). A complaint that fails to plausibly allege either prong fails to state a valid FTSA claim.

The Complaint admits that Parker is not a Florida resident. It expressly alleges that "Plaintiff Parker's domicile is in Washington County, Wisconsin," and that she is "a citizen of the State of Wisconsin." (Dkt. 1, ¶ 11.) The only additional allegation regarding Parker's receipt of the messages states that she received text messages on her phone. (Dkt. 1, ¶¶ 11, 51.) Nothing in the Complaint suggests Parker has a Florida area code, maintains a Florida address, or was physically present in Florida when the messages arrived.

These allegations fail to support a reasonable inference that Parker qualifies as "a consumer located in Florida" under the FTSA. Fla. Stat. §§ 501.059(1)(e), (8)(d); *Turizo*, 603 F. Supp. 3d at 1346. Because Parker is a Wisconsin resident who received the alleged texts in Wisconsin, she cannot bring claims under the FTSA, and her claims under Counts II and III should be dismissed.

This deficiency is also fatal to Parker's ability to represent the FTSA class definitions, both of which are limited to persons residing or located within Florida. (Dkt. 1, ¶ 83.) Parker plainly does not satisfy either class definition and, therefore, lacks standing to represent either FTSA class.

## III. COUNT II INDEPENDENTLY FAILS TO STATE A CLAIM UNDER FLA. STAT. § 501.059(8).

Even setting aside the jurisdictional defects addressed above, Count II independently fails to state a claim. The FTSA's Caller ID Rules require that any person making a telephonic sales call transmit to the consumer's caller identification service either: (i) the originating telephone number, or (ii) as a permitted substitute, "the name of the seller on behalf of which a telephonic sales call is placed and the seller's customer service telephone number, which is answered during regular business hours." Fla. Stat. § 501.059(8)(b). The Complaint alleges only that short code 71988 "was not capable of receiving telephone calls." (Dkt. 1, ¶¶ 48, 54, 60.) It does not allege that Defendants failed to provide the statutory alternative—a callable customer service number. This omission is fatal.

A plausible FTSA Caller ID claim requires factual allegations that **both** statutory methods of compliance were absent. The Complaint pleads neither that the transmitted short code was unaccompanied by an accessible customer service number, nor that Defendants provided no callable number whatsoever. Without those allegations, Count II fails to plausibly allege a violation under *Twombly* and *Iqbal*.

Furthermore, under *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021), Plaintiffs must allege a concrete injury-in-fact traceable to the specific statutory violation. Plaintiffs do not allege that they attempted to use the transmitted number to contact Defendants or that the inability to do so caused any concrete harm distinct from the unwanted texts themselves. Plaintiffs successfully identified the messages as coming from Hatchitt, texted "STOP," and retained counsel—all without any need to call back the transmitted number. Absent a concrete injury traceable specifically to the Caller ID deficiency, Plaintiffs lack Article III standing to pursue Count II.

## **IV. COUNT III INDEPENDENTLY FAILS TO STATE A CLAIM UNDER FLA. STAT. § 501.059(5).**

The FTSA's internal do-not-call provision prohibits initiating an outbound text message to a consumer "who has previously communicated to the person that he or she does not wish to receive" such messages, where the offending message

is sent more than 15 days after the opt-out request. Fla. Stat. § 501.059(5)(a), (b). As to Arrazola, the Complaint makes only conclusory allegations about the number of post-opt-out messages without adequately pleading specific facts showing each message was sent more than 15 days after his August 25, 2025 opt-out. (Dkt. 1, ¶ 112.) The Complaint does not identify the dates of the four alleged post-opt-out messages, their content, or how they qualify as "telephonic sales calls" under the FTSA. Without this particularity, Count III fails to satisfy Rule 8(a)'s pleading requirements as to both Plaintiffs.

## V. PLAINTIFF'S TCPA CLAIMS AGAINST DELFGAUW INDIVIDUALLY MUST BE DISMISSED BECAUSE THE COMPLAINT FAILS TO PLEAD PERSONAL LIABILITY.

Even if text messages were deemed actionable under the TCPA—which they are not—Plaintiffs have not pled sufficient facts to plausibly establish Delfgauw's personal liability. As this Court recently held in *El Sayed*: "[p]ersonal liability of an officer under the TCPA should be the exception rather than the rule." 2025 U.S. Dist. LEXIS 209469, at *4 (quoting *Appelbaum v. Rickenbacker Grp., Inc.*, 2013 WL 12121104, at *3 (S.D. Fla. 2013)). An officer "is not liable unless [he] committed, directly participated in, or otherwise authorized the commission of wrongful acts within the scope of [his] employment." *El Sayed*, 2025 U.S. Dist. LEXIS 209469, at *4 (quoting *Mais v. Gulf Coast Collection Bureau, Inc.*, 2013 WL 1283885, at *4 (S.D. Fla. 2013)). "Some showing of intentional misconduct or gross failure to

implement policies that comply with the TCPA should be required." *Id.* (quoting *Appelbaum*, 2013 WL 12121104, at *3).

The Supreme Court has confirmed that corporate form ordinarily shields officers from personal liability: "in the absence of special circumstances, it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability for torts committed by its employees or agents." *Meyer v. Holley*, 537 U.S. 280, 286, 289 (2003). The Eleventh Circuit has similarly cautioned that "individuals ordinarily are shielded from personal liability when they do business in a corporate form, and … it should not lightly be inferred that Congress intended to disregard this shield." *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1313 (11th Cir. 2013). Where authorization is the basis of personal liability, that authorization must be coupled with knowledge that the conduct being authorized violates the TCPA. *Physicians Healthsource, Inc. v. A-S Medication Sols. LLC*, 2015 WL 3644598, at *3 (N.D. Ill. 2015).

This Court's ruling in *El Sayed* is directly on point, dismissing claims against the CEO where the complaint alleged only that she "personally participated in and/or directed and authorized" the text messages. 2025 U.S. Dist. LEXIS 209469, at *4. "Mere conclusory statements cannot survive a motion to dismiss." *Id.* (citing *Iqbal*, 556 U.S. at 678).

Here, the Complaint's allegations against Delfgauw are substantively identical to those rejected in *El Sayed*. The Complaint alleges that Delfgauw: (a)

participated in selecting vendors used to place texts; (b) approved the methods by which phone number lists were acquired; (c) designed and approved the telemarketing campaigns; (d) worked on and approved scripting; and (e) selected the CRM and dialing systems. (Dkt. 1, ¶ 41.) These allegations describe ordinary corporate officer functions, not the "direct commission or authorization of wrongful acts" required to pierce the corporate form. *Id.*; *Mais*, 2013 WL 1283885, at *4. The Complaint does not allege that Delfgauw specifically and knowingly authorized any particular conduct that he knew was in violation of the TCPA. Without that allegation, there is no plausible basis for individual liability. "Corporate officers are generally not liable merely because the corporation has violated the law." *Mais*, 2013 WL 1283885, at *4. Personal liability should be the exception, not the rule. *Appelbaum*, 2013 WL 12121104, at *3. Nothing in the Complaint justifies departing from that rule here. Accordingly, all claims against Delfgauw individually should be dismissed.

## VI. PLAINTIFF'S FTSA CLAIMS AGAINST DELFGAUW INDIVIDUALLY MUST BE DISMISSED BECAUSE THE COMPLAINT FAILS TO PLEAD PERSONAL LIABILITY.

Even if the alleged telephonic solicitations were actionable under the Florida Telephone Solicitation Act—which they are not—Plaintiffs have not pled sufficient facts to plausibly establish Delfgauw's personal liability under the FTSA. A corporate officer is not personally liable for corporate acts performed within the scope of corporate duties unless the officer personally participates or commits

independent tortious conduct in his individual capacity. *Jones v. Vasilias*, 359 So. 3d 10, 13-14 (Fla. 4th DCA 2023); see also, *Superior Garlic Int'l v. E & A Produce Corp.*, 913 So. 2d 645, 649 (Fla. Dist. Ct. App. 2005). To hold a corporate officer individually liable for tortious acts, "the complaining party must allege and prove that the officer or agent owed a duty to the complaining party, and that the duty was breached through personal (as opposed to technical or vicarious) fault." *Mathis v. Reese*, 339 So. 3d 479, 479-80 (Fla. Dist. Ct. App. 2022) (quoting *White v. Wal-Mart Stores, Inc.*, 918 So. 2d 357, 558 (Fla. Dist. Ct. App. 2005) (citing *McElveen v. Peeler*, 544 So. 2d 270, 271-72 (Fla. Dist. Ct. App. 1989)).

The principle that corporate form shields officers applies with equal force to statutory violations under Florida law. In the analogous context of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Florida courts require that "to prove individual liability it is necessary to show that an individual defendant actively participated in or had some measure of control over the corporation's deceptive practices," and "to hold a corporate officer liable for monetary restitution, a plaintiff is also required to establish that the defendant had or should have had knowledge or awareness of the misrepresentations." *Bechor v. Simcenter, Inc.*, 394 So. 3d 666, 669 (Fla. Dist. Ct. App. 2024) (quoting *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1073-74 (Fla. Dist. Ct. App. 2008) (citations omitted)). Similarly, "to proceed against an individual using a FDUTPA violation theory an aggrieved party must allege that the individual was a direct participant in the improper

dealings." *Id.* Courts have consistently ruled that corporate officers are not personally responsible for actions taken by the corporation solely because of their official roles. *Checkers Drive-In Rests., Inc. v. Tampa Checkmate Food Servs.*, 805 So. 2d 941, 944 (Fla. Dist. Ct. App. 2001). Rather, personal liability arises only if the officer directly engages in the wrongful behavior. *Id.*

Under Florida's active participation theory, "a director or officer commits or participates in the commission of a tort, whether or not it is also by or for the corporation, he is liable to third persons injured thereby." *Home Loan Corp. v. Aza*, 930 So. 2d 814, 815-16 (Fla. Dist. Ct. App. 2006). However, "a director or officer of a corporation does not incur personal liability for its torts merely by reason of his official character; he is not liable for torts committed by or for the corporation unless he has participated in the wrong." *Id.* at 815. "Under the participation theory, the court imposes liability on the individual as an actor rather than as an owner," and "liability attaches where the record establishes the individual's participation in the tortious activity." *Costa Inv'rs, LLC v. Liberty Grande, LLC*, 353 So. 3d 627, 634 (Fla. Dist. Ct. App. 2022) (citations omitted).

Supreme Court precedent confirms that "in the absence of special circumstances, it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability for torts committed by its employees or agents." *Meyer v. Holley*, 537 U.S. 280, 286, 289 (2003). Consistent with this principle, personal liability should be the exception rather than the rule, and

some showing of intentional misconduct or gross failure to implement policies that comply with applicable statutory requirements should be required before piercing the corporate shield.

The pleading standard established by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), mandates that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014). "The plausibility standard is met only where the facts alleged enable 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* "A plaintiff cannot rely on 'naked assertion[s] devoid of further factual enhancement.'" *Id.* "In other words, '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.*

Federal courts applying Iqbal have repeatedly dismissed claims against individual officers where the complaint fails to allege personal participation with sufficient specificity. "Factual allegations that are 'merely consistent with' a defendant's liability' fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). "If allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Id.* Florida courts enforce a strict fact-pleading standard, requiring that a complaint include the core facts demonstrating entitlement to relief. *Horowitz v. Laske*, 855 So.

2d 169, 172-73 (Fla. Dist. Ct. App. 2003). Allegations that are merely bare legal conclusions are inadequate to establish a cause of action. *Id*.

Here, the Complaint's allegations against Delfgauw are substantively identical to those routinely rejected under the active participation standard. The Complaint alleges that Delfgauw: (a) participated in selecting vendors used to place telephonic solicitations; (b) approved the methods by which phone number lists were acquired; (c) designed and approved the telemarketing campaigns; (d) worked on and approved scripting; and (e) selected the CRM and dialing systems. (Dkt. 1, ¶ 41.) These allegations describe ordinary corporate officer functions—the general supervision and management of business operations—not the direct commission or authorization of wrongful acts required to pierce the corporate form. *Home Loan Corp.*, 930 So. 2d at 815-16; *Checkers*, 805 So. 2d at 944.

The Complaint does not allege that Delfgauw specifically and knowingly authorized any particular conduct that he knew was in violation of the FTSA. There is no allegation that Delfgauw personally placed calls to consumers on the "no sales solicitation calls" list. There is no allegation that Delfgauw personally directed the use of automated dialing systems without obtaining prior express written consent. There is no allegation that Delfgauw personally authorized the use of misleading caller identification technology or the concealment of caller identity. There is no allegation that Delfgauw had knowledge that the practices

being authorized violated the FTSA, or that he acted with intentional misconduct or gross failure to implement compliant policies.

Without such specific allegations, the Complaint presents only "threadbare recitals" that Delfgauw "participated in" or "approved" various business functions, coupled with the legal conclusion that these activities somehow render him personally liable. *Simpson*, 744 F.3d at 708. This falls well short of the factual matter required to state a plausible claim. Without factual allegations demonstrating Delfgauw's active and knowing participation in FTSA-violative conduct, there is no plausible basis for individual liability.

Florida courts have consistently affirmed dismissals where plaintiffs fail to provide evidence of an officer's personal wrongdoing. *Mathis*, 339 So. 3d at 479. Here, the Complaint provides no facts demonstrating that Delfgauw played any role in the alleged FTSA violations beyond his general corporate officer responsibilities.

Personal liability under the FTSA should be the exception, not the rule. Nothing in the Complaint raises Delfgauw's actions to the point of personal liability, because there is no evidence of any personal wrongdoing. Accordingly, all FTSA claims against Delfgauw individually should be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court (i) dismiss Plaintiffs' Complaint with prejudice; and (ii) award all other relief it deems equitable and just.

Respectfully submitted,

<u>/s/ *Garrett L. Roberts*</u>
Garrett L. Roberts
Florida Bar No. 1038482
*garrettroberts@waderobertslaw.com*

Wade | Roberts
1420 Celebration Blvd., Suite 200
Celebration, Florida 34747
(813) 344-2655

ATTORNEYS FOR DEFENDANTS HATCHITT TAX CLUB, INC. AND JOSEPH DELFGAUW

LOCAL RULE 3.01(g) CERTIFICATE

Pursuant to Local Rule 3.01(g), undersigned counsel certifies that on June 30, 2026, counsel for Defendants conferred with counsel for Plaintiffs by telephone call regarding the relief sought in the foregoing Motion. The parties could not agree on a resolution on all or any parts of the Motion. Counsel for Plaintiffs advised that Plaintiffs are opposed to all relief sought herein.

By: */s/ Garrett L. Roberts*
**GARRETT L. ROBERTS**

CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2026, that a true and correct copy of the foregoing was filed via the Court's CM/ECF system which served a copy on all counsel of record.

By: */s/ Garrett L. Roberts*
**GARRETT L. ROBERTS**