UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
(Orlando Division)

Case No.: 6:26-cv-00085

ZAKARIYAH ARRAZOLA and
TYRAANN PARKER,
individually and on behalf of all others
similarly situated,

Plaintiffs,

v.

HATCHITT TAX CLUB, INC. and
JOSEPH DELFGAUW,

Defendants.

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(B)(6) WITH INCORPORATED MEMORANDUM OF LAW**

Defendants, Hatchitt Tax Club, Inc. ("Hatchitt") and Joseph Delfgauw ("Delfgauw") (collectively "Defendants"), by and through their attorneys, respectfully submit this Motion to Dismiss Plaintiffs' First Amended Class Action Complaint (the "First Amended Complaint") Pursuant to Federal Rule of Civil Procedure 12(b)(6) with Incorporated Memorandum of Law. In support thereof, Defendants state as follows:

## INTRODUCTION

Plaintiffs Zakariyah Arrazola ("Arrazola") and Tyraann Parker ("Parker") (collectively "Plaintiffs") filed this proposed class action against Defendants under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059, and the Florida Telemarketing Act, Fla. Stat. § 501.616(6)(a) ("FTA"). Plaintiffs allege that Defendants sent unsolicited telemarketing text messages using short code 71988 and failed to honor opt-out requests. The First Amended Complaint asserts four counts: (i) Count I under Fla. Stat. § 501.059(5) for alleged violations of the FTSA's internal do-not-call provisions (Dkt. 21, ¶¶ 142–150); (ii) Count II under Fla. Stat. § 501.059(8) for alleged violations of the FTSA's Caller ID Rules (Dkt. 21, ¶¶ 151–157); (iii) Count III under Fla. Stat. § 501.616(6)(a) for alleged violations of the Florida Telemarketing Act's after-hours restrictions (Dkt. 21, ¶¶ 158–169); and (iv) Count IV under 47 U.S.C. § 227(c)(5) for alleged violations of the TCPA's after-hours quiet-hours regulations (Dkt. 21, ¶¶ 170–175).

Each count fails as a matter of law. Count IV must be dismissed because this Court and numerous other courts in this District have held that the private right of action under 47 U.S.C. § 227(c)(5) does not extend to text messages. *El Sayed v. Naturopathica Holistic Health, Inc.*, 2025 U.S. Dist. LEXIS 209469 (M.D. Fla. Oct. 24, 2025); *Lopresti v. Nouveau Essentials Mktg. LLC*, No. 5:25-cv-00282-CEM-PRL, 2026 U.S. Dist. LEXIS 39599 (M.D. Fla. Feb. 26, 2026). Furthermore, Counts I, II, and III

must be dismissed as to Parker because the First Amended Complaint fails to adequately allege either that Parker was a Florida resident or in Florida when she received the texts, or that the messages were physically transmitted from Florida—the two jurisdictional predicates required by the FTSA and FTA. *Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, 603 F. Supp. 3d 1334, 1346 (S.D. Fla. 2022); *Dobronski v. Tobias & Assocs.*, 769 F. Supp. 3d 681, 703–04 (E.D. Mich. 2025). Counts I, II, and III also independently fail to state a claim as to both Plaintiffs for the reasons set forth below.

## BACKGROUND

In their First Amended Class Action Complaint (Dkt. 21), Plaintiffs contend that Defendants sent unsolicited telemarketing text messages using short code 71988 to market Hatchitt's tax-planning, tax-refund-advance, and related consumer products and services. (Dkt. 21, ¶¶ 13, 75–77.) Hatchitt is a Michigan corporation with a listed address in Grandville, Michigan. (Dkt. 21, ¶¶ 12, 15–17.) Delfgauw, Hatchitt's president, is alleged to reside in Cape Coral, Florida. (Dkt. 21, ¶¶ 22–23.)

Arrazola, a Florida resident, alleges he began receiving telemarketing texts at least in August 2025, texted "STOP" on August 25, 2025, and received at least eleven (11) additional post-revocation messages, specifically on September 1, 2, 5, 9, 10, 13, 15, 19, 20, 26, and October 3, 2025. (Dkt. 21, ¶¶ 78–84.) Parker alleges she is a citizen of the State of Wisconsin, domiciled in Washington County, Wisconsin;

that she began receiving texts in September 2024; that she texted "STOP" at least seven times beginning September 18, 2024; and that she received at least sixty-three post-opt-out messages through January 6, 2026. (Dkt. 21, ¶¶ 85–86, 91.) Plaintiffs further allege that short code 71988 was not capable of receiving incoming calls. (Dkt. 21, ¶¶ 80, 88.)

On behalf of four proposed classes, Plaintiffs assert: Count I under Fla. Stat. § 501.059(5) for violations of Florida's internal do-not-call rules ("FTSA Internal DNC Class"); Count II under Fla. Stat. § 501.059(8) for Caller ID violations ("FTSA ID Class"); Count III under Fla. Stat. § 501.616(6)(a) for after-hours violations on behalf of Parker ("FTA After Hours Class"); and Count IV under 47 U.S.C. § 227(c)(5) for after-hours violations on behalf of Parker ("TCPA After Hours Class"). (Dkt. 21, ¶ 129.)

## LEGAL STANDARD UNDER RULE 12(b)(6)

A complaint fails under Rule 12(b)(6) if it does not provide enough information to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555, 570 (2007). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts accept well-pleaded facts as true, but "do not … accept as true unwarranted deductions of fact or legal conclusions." *Henry v. Jones*, 484 F. App'x 290, 291 (11th Cir. 2012) (internal quotations omitted).

## ARGUMENT

## I. COUNT IV MUST BE DISMISSED BECAUSE THE TCPA'S PRIVATE RIGHT OF ACTION UNDER 47 U.S.C. § 227(c) DOES NOT APPLY TO TEXT MESSAGES.

Following the Supreme Court's elimination of *Chevron* deference, courts in this District have consistently held that the private right of action under the TCPA for unlawful telephone solicitations does not extend to text messages. *El Sayed*, 2025 U.S. Dist. LEXIS 209469, at *3[1]; *Lopresti*, 2026 U.S. Dist. LEXIS 39599, at *11–12. Count IV, brought under 47 U.S.C. § 227(c)(5), is based exclusively on text messages sent before 8:00 a.m. local time. (Dkt. 21, ¶¶ 170–175.)("[a]fter hours class suffered the injuries allegedly above and are entitled ***under 47 U.S.C. § 227(c)(5)*** (emphasis added)). Because text messages are not "telephone calls" within the meaning of the TCPA, Count I must be dismissed.

### *A. There Is No Basis to Read the TCPA as Applying to Text Messages Other Than Abandoned FCC Deference.*

Section 227(c) of the TCPA provides a private right of action to "[a] person who has received more than one *telephone call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5) (emphasis added). Section 227(c) does not

[1] The undersigned represented Naturopathica Holistic Health, Inc. in the above referenced matter, and the Plaintiff's allegations in that case were similar to the one at hand, in that the claims arose solely from text message communications. The Court observed that those claims could not prevail in light of the Court's vacation of Chevron Deference.

mention text messages, despite the TCPA distinguishing between telephone calls and text messages in other sections. *See* 47 U.S.C. § 227(e).

The TCPA was applied to text messages solely through FCC rulemaking. In 2003, the FCC decreed that the term "call" encompasses both voice calls and text calls. *In Re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014 ¶ 165 (2003). The FCC cited no statutory basis—it rested purely on its subjective interpretation of the statute's goals. Courts followed because they believed they were required to defer to the FCC under the Chevron Deference doctrine. *See, e.g.*, *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015). That deference is no longer required.

***B. Courts Are No Longer Required to Defer to the FCC.***

The Supreme Court eliminated *Chevron* deference in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). *Loper* restored courts to their traditional role "to decide whether the law means what the agency says." *Id.* at 392. The Supreme Court subsequently addressed the TCPA directly, ruling that district courts are not "bound by the FCC's interpretation of the TCPA" and "must independently determine for itself whether the agency's interpretation of a statute is correct" using "ordinary principles of statutory interpretation." *McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 606 U.S. 146, 155, 168 (2025) (citing *Loper Bright*, 603 U.S. at 402).

### *C. This Court Has Held That "Text Messages" Are Not "Telephone Calls" Under § 227(c)(5).*

In *El Sayed*, this Court held that "the statutory text here is clear, and a text message is not a 'telephone call.'" 2025 U.S. Dist. LEXIS 209469, at *3 (adopting Judge Winser's conclusion in *Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195, at *1 (N.D. Fla. 2025)). The Court observed that "in common American English usage, a 'telephone call' and a 'text message' are separate and distinct forms of communication," and that the term "text message" appears elsewhere in the TCPA and related amendments, "confirm[ing] Congress understood the pertinent distinction and legislated mindful of the distinction." *Id.* at *3–4 (citing *Fernandez v. Seaboard Marine Ltd.*, 135 F.4th 939, 958 (11th Cir. 2025)). "The omission of 'text message' from paragraph 227(c)(5) confirms that the provision applies only to a 'telephone call.'" *Id.* at *4. This ruling was affirmed by Judge Lammens in *Lopresti*, 2026 U.S. Dist. LEXIS 39599, at *10–11. Most district courts in Florida have reached the same conclusion. *Davis*, 2025 WL 2491195, at *4; *Harriel v. Bealls, Inc.*, 2025 WL 2379617 (M.D. Fla. Aug. 15, 2025); *but see Glasel v. Office Depot, LLC*, 2025 U.S. Dist. LEXIS 598156, at *7 (S.D. Fla. Nov. 25, 2025).

Because Count IV is based entirely on text messages sent via short code 71988 (Dkt. 21, ¶¶ 75–77, 85–93, 170–175), and because this Court has ruled that text messages are not actionable under 47 U.S.C. § 227(c)(5), Count IV must be dismissed with prejudice.

## II. COUNTS I, II, AND III MUST BE DISMISSED AS TO PLAINTIFF PARKER BECAUSE THE FIRST AMENDED COMPLAINT FAILS TO ALLEGE THE FTSA'S AND FTA'S JURISDICTIONAL REQUIREMENTS.

### *(a) Parker Is Not a Florida Resident Nor Does She Alleged that the Messages Were Received In Florida.*

Second, Plaintiff's claims under Florida Statutes likewise fail as a matter of law. The FTSA and FTA applies only to communications that satisfy at least one of two jurisdictional requirements: (1) the communication was made to a Florida resident or a person physically located in Florida at the time of the communication, or (2) the communication originated from Florida. Fla. Stat. §§ 501.059(1)(e), (8)(d); Fla. Stat. § 501.603.[2] The statute "does not extend to calls to non-Florida residents or persons outside the state." *Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, 603 F. Supp. 3d 1334, 1346 (S.D. Fla. 2022); *see also Dobronski v. Tobias & Assocs.*, 769 F. Supp. 3d 681, 703–04 (E.D. Mich. 2025) (dismissing FTSA claims where plaintiff did not allege he was a Florida resident or in Florida when receiving the calls). A complaint that fails to plausibly allege either prong fails to state a valid FTSA claim. Fla. Stat. § 501.603.

The First Amended Complaint admits that Parker presently resides in Washington County, Wisconsin. (Dkt. 21, ¶ 11.) While the First Amended Complaint now attempts to supply a Florida nexus by alleging that Parker previously resided in Hillsborough County, Florida, that she last filed a tax return

[2] The FTA incorporates the FTSA's definition of "Doing business in this state". Fla. Stat. § 501.603

as a Florida resident, and that Defendants targeted her believing she was a Florida resident (Dkt. 21, ¶¶ 11, 93–94), these allegations remain insufficient. The FTSA's jurisdictional predicate turns on where Parker was located when she received the messages, not where she once resided. Fla. Stat. §§ 501.059(1)(e), (8)(d). The First Amended Complaint does not allege that Parker was physically present in Florida when any of the challenged texts arrived, and her current Wisconsin domicile confirms she was not. Past Florida residency and the existence of Florida-connected public records do not satisfy the statute's requirement that the consumer be a Florida resident or be located in Florida at the time of the solicitation.

These allegations fail to support a reasonable inference that Parker qualifies as "a consumer located in Florida" under the FTSA. Fla. Stat. §§ 501.059(1)(e), (8)(d); *Turizo*, 603 F. Supp. 3d at 1346. Because Parker is a Wisconsin resident who received the alleged texts in Wisconsin, she cannot bring claims under the FTSA or the FTA, and her claims under Counts I, II, and III should be dismissed.

This deficiency is also fatal to Parker's ability to represent the FTSA and FTA class definitions, all of which are predicated on Defendants' conduct directed at Florida consumers. (Dkt. 21, ¶ 129.) Parker plainly does not satisfy any of those class definitions and, therefore, lacks standing to represent the FTSA Internal DNC Class, the FTSA ID Class, or the FTA After Hours Class.

Even if Parker could satisfy the "to Florida" prong — which she cannot, for the reasons set forth in the existing briefing — the First Amended Complaint independently fails to allege that the challenged texts were "made from" Florida. The FTSA provides that its prohibitions apply to telephonic sales calls "made to or from this state." Fla. Stat. §§ 501.059(1)(e), (8)(d). Plaintiffs attempt to satisfy the "from" prong by alleging that Defendant Delfgauw resides in Cape Coral, Florida, and that he "directed," "authorized," and "personally participated in" the campaign from Lee County, Florida. (Dkt. 21, ¶¶ 8–9, 20–21.) These allegations are legally insufficient to carry the "from Florida" prong.

The word "made" in the phrase "made from this state" refers to the physical act of transmission — the location from which a communication is actually sent — not the domicile of any person who approved or oversaw the campaign. A text message is "made from" the location where it is physically dispatched, not where the person who authorized it happens to reside. *Dobronski*, 769 F. Supp. 3d at 703–04. (Where call centers were not located in Florida, the call was not conducted from a location in Florida). The First Amended Complaint does not allege that Delfgauw personally sent any individual message from a device physically located in Florida; it alleges only that he designed, approved, and oversaw the campaign from Florida. Authorization is not origination.

The First Amended Complaint is entirely silent on where the text messages at issue were physically dispatched. Plaintiffs allege that Defendants transmitted the messages using short code 71988 operated through a platform called Text-Calibur, which the complaint's own exhibit describes as "an online SMS service made for companies, creators, and entrepreneurs alike to send automated SMS messages and campaigns to their subscribers." (Dkt. 21, ¶ 30.) Plaintiffs plead no facts whatsoever about where Text-Calibur's servers, transmission infrastructure, or sending equipment is located. The physical origin of a text message is the server or transmission facility from which it is dispatched — and Plaintiffs are wholly silent on that point.

Under the Supreme Court's pleading standards, the Court cannot infer a Florida origination point from allegations that simply do not address the question. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Delfgauw's Florida residence establishes, at most, where he sat when he authorized the campaign — not where the messages were physically transmitted. A general contractor who approves a project from a Florida office does not thereby "perform" the work in Florida when the actual construction is done by out-of-state subcontractors. Similarly, a campaign operator who uses an online SMS platform to dispatch messages has not transmitted those messages "from" Florida absent any allegation about where the platform's infrastructure is located. *Dobronski*, 769 F. Supp. 3d at 703–04. Because

the First Amended Complaint is silent on that critical point, the "from Florida" prong is not plausibly alleged, and Counts I, II, and III must be dismissed as to Parker on this additional and independent ground.

## III. COUNT II INDEPENDENTLY FAILS TO STATE A CLAIM UNDER FLA. STAT. § 501.059(8).

Even setting aside the jurisdictional defects addressed above, Count II independently fails to state a claim. The FTSA's Caller ID Rules require that any person making a telephonic sales call transmit to the consumer's caller identification service either: (i) the originating telephone number, or (ii) as a permitted substitute, "the name of the seller on behalf of which a telephonic sales call is placed and the seller's customer service telephone number, which is answered during regular business hours." Fla. Stat. § 501.059(8)(b). The First Amended Complaint alleges that short code 71988 "was not capable of receiving telephone calls" and that the challenged solicitations "did not transmit or substitute the seller's name and a customer-service telephone number answered during regular business hours." (Dkt. 21, ¶¶ 80, 88, 103–104, 153.) The FTSA's Caller ID Rules permit compliance through either of two methods: transmitting (1) the callable originating telephone number, or (2) as a substitute, "the name of the seller on behalf of which a telephonic sales call is placed and the seller's customer service telephone number, which is answered during regular business hours." Fla. Stat. § 501.059(8)(b). The complaint's conclusory denial of the

substitute method is undermined by the exhibits embedded within the complaint itself.

The screenshots reproduced in the First Amended Complaint show that the messages display the brand name "hatchitt", contain hyperlinks to "dep.hatchitt.com," "ol.hatchitt.com," and "lp.hatchitt.com," and instruct recipients to visit Hatchitt's website to complete the enrollment process. (Dkt. 21, ¶¶ 79, 87, 92.) The business identity of the sender was thus transmitted and apparent to Plaintiffs in every communication at issue. Where a complaint's own attached exhibits contradict its conclusory allegations, the exhibits control. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007). Plaintiffs' conclusory denial of substitute compliance cannot survive Iqbal where the messages disclosed the sender's identity. The complaint is further silent on whether a callable customer service number was included in the messages or was accessible through the transmitted website links — a silence that precludes any plausible inference of a violation of § 501.059(8)(b)'s substitute method. Twombly, 550 U.S. at 555.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court (i) dismiss Plaintiffs' First Amended Complaint with prejudice; and (ii) award all other relief it deems equitable and just.

Respectfully submitted,


*/s/ Garrett L. Roberts*
Garrett L. Roberts
Florida Bar No. 1038482
*garrettroberts@waderobertslaw.com*

Wade | Roberts
1420 Celebration Blvd., Suite 200
Celebration, Florida 34747
(813) 344-2655

ATTORNEYS FOR DEFENDANTS HATCHITT TAX CLUB, INC. AND JOSEPH DELFGAUW

LOCAL RULE 3.01(g) CERTIFICATE

Pursuant to Local Rule 3.01(g), undersigned counsel certifies that on August 17, 2026, counsel for Defendants conferred with counsel for Plaintiffs by telephone call regarding the relief sought in the foregoing Motion. The parties could not agree on a resolution on all or any parts of the Motion. Counsel for Plaintiffs advised that Plaintiffs are opposed to all relief sought herein.

By: */s/ Garrett L. Roberts*
**GARRETT L. ROBERTS**

CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2026, that a true and correct copy of the foregoing was filed via the Court's CM/ECF system which served a copy on all counsel of record.

By: */s/ Garrett L. Roberts*
**GARRETT L. ROBERTS**